NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DICAR, INC., and ROBUD, | :       **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | :       **OPINION** |
| v. | :       Civil Action No. 2:05-cv-5426 (DMC)(MF) |
| STAFFORD CORRUGATED PRODUCTS, INC., and RODICUT ROTARY DIECUTTING, | : |
| Defendants. | : |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Plaintiffs Dicar, Inc. and Robud ("Plaintiffs") to dismiss Defendants Stafford Corrugated Products, Inc. and Rodicut Rotary Diecutting's ("Defendants") counterclaims for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6); as well as to strike Defendants' Affirmative Defenses to the underlying lawsuit pursuant to FED R. CIV. P. 12(f). Oral argument was heard on June 8, 2009. After carefully considering the submissions and oral arguments of the parties, and based upon the following, it is the finding of this Court that Plaintiffs' motion to dismiss Defendants' counterclaims is **granted** in part and **denied** in part; and Plaintiffs' motion to strike Defendants' affirmative defenses is **denied**.

## I. BACKGROUND[1]

### A. Factual Background

Plaintiff Dicar is in the business of manufacturing and selling products for use in the rotary die cutting industry. One such product is the die cutter blanket. Plaintiff Robud is the owner of patents related to the die cutter blanket. Robud has sold an exclusive license to Dicar to manufacture the die

---

[1] The facts set-forth in this Opinion are taken from the parties' respective papers.

cutter blanket.  Defendants Stafford and Rodicut are also in the rotary die cutting industry.  Stafford sells and imports a die cutter blanket manufactured by Rodicut.

In 1997, Robud was involved in prosecuting an application for a patent that eventually became U.S. Patent No. 5,720,212 entitled "Locking Arrangement For Die Cutter Blanket" (the "'212 Patent"). On April 15, 1997, during prosecution of the '212 Patent, the patent examiner rejected claim 18 of the patent application.  Robud in claim 18 described the '212 Patent as a "locking member including a compressible means."  On April 25, 1997, in response to the rejection, Robud amended claim 18 of the application to call for "a locking member and compressible means coupled to the locking member." As a result of Robud's amendment, the patent examiner approved claim 18.  Claim 18 later became claim 13 of the patent application.  On February 24, 1998, the United States Patent and Trademark Office ("USPTO") issued to Robud the '212 Patent entitled "Locking Arrangement For Die Cutter Blanket."

### B.    Procedural Background

On November 16, 2005, Plaintiffs commenced an action alleging, *inter alia*, infringement of the '212 Patent against Stafford.  After proceeding through discovery for approximately two years, Plaintiffs moved on November 28, 2007 for summary judgment on their '212 Patent infringement claim.  At the Court's instruction, and after Plaintiffs withdrew their motion, both parties filed amended pleadings.  Discovery continued until May 5, 2008, at which time Plaintiffs filed an Amended Complaint and added Rodicut as a Defendant.  Defendants Stafford and Rodicut filed their Answer and Counterclaims on July 3, 2008.

Stafford and Rodicut's counterclaims consist of: (1) declaratory judgment of non-infringement, invalidity and unenforceability of the '212 Patent; (2) violation of Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1); (3) violation of Section 2 of the Sherman Antitrust Act (15 U.S.C. § 2); and (4)

violation of New Jersey Antitrust laws (N.J. Stat. §§ 56:9-1 *et seq.*).  Stafford and Rodicut also assert the following affirmative defenses: (1) laches and estoppel; (2) invalidity and unenforceability of the '212 Patent; (3) inequitable conduct before the USPTO; and (4) unclean hands as a result of Plaintiffs impermissible broadening of the scope of the '212 Patent.

Plaintiffs responded with this motion to dismiss and strike Defendants' counterclaims and affirmative defenses pursuant to FED. R. CIV. P. 12(b)(6), 12(f) and 9(b).  There is presently a dispute between the parties as to the construction of the '212 Patent and its prosecution history which will be addressed at a *Markman* hearing[2].

**II.   STANDARDS OF REVIEW**

**A.  Motion to Dismiss under Rule 12(b)(6)**

When deciding a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), all allegations must be taken as true and viewed in the light most favorable to the plaintiff.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Philips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir.2002).  The court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  County of Allegheny, 515 F.3d at 233 (quoting Pinker, 292 F.3d at 374 n.7).  In evaluating a Rule 12(b)(6) motion, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents, if the plaintiff's claims are based on those documents.  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

Pleading standards have been directly applied to Antitrust claims.  The Supreme Court explains

---

[2]A *Markman* hearing is presently scheduled and the Court has deferred decision on some of the issues in this motion until that hearing is held.

that "a claim requires a complaint with enough factual matter (taken as true) to suggest [the required element]." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).  Stated differently, the "[f]actual allegations [of the complaint] must be enough to raise a right to relief above the speculative level." Id. at 555.  Nonetheless, the Supreme Court specified that there is no heightened standard of fact pleading or requirement to plead specifics.  Instead, there is a requirement to plead "only enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

While the pleading standard as provided by FED. R. CIV. P. 8 does not require "detailed factual allegations," it does demand more than an unadorned accusation.  Bell Atlantic Corp. v. Twombly 550 U.S. 544, 555 (2007).  A pleading that offers labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do."  Id.  Recently the Supreme Court explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 129 S. Ct. 1937 (U.S. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556-57, 570 (2007).

**B.**  Motion to Strike under Rule 12(f)

Under Rule 12(f) "[t]he Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).  Motions to strike are generally "viewed with disfavor" and will "be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues."  Cryofab, Inc. v. Precision Med., Inc., 2008 U.S. Dist LEXIS 51758 at *6 (D.N.J. Jul. 3, 2008) (quoting Garlanger v. Verbeke, 223 F. Supp. 2d 596, 609 (D.N.J. 2002).  Furthermore, this Court has

held that "Rule 12(f) should be construed strictly against striking portions of the pleading on grounds of immateriality and if the motion is granted at all, the complaint should be pruned with care." <u>Morgan Home Fashions, Inc. v. UTI, United States, Inc.</u>, 2004 U.S. Dist. LEXIS 13412 at *28 (D.N.J. Feb. 9, 2004) (quoting <u>Lipsky v. Commonwealth United Corp.</u>, 551 F.2d 887, 894 (2d Cir. 1976)).

## III.   DISCUSSION

The Court will examine Plaintiffs' contentions in the following way.  First, the Court will analyze each of Plaintiffs' contentions regarding Defendants' counterclaims.  They include (1) failure to allege injury; (2) failure under the <u>Noerr-Pennington</u> doctrine; and (3) failure to allege a relevant affected market.  Second, the Court will analyze Plaintiffs' contention that Defendants' second counterclaim under Section 1 of the Sherman Antitrust Act should fail under the <u>Copperweld</u> doctrine.  Third, the Court will analyze Plaintiffs' contention that Defendants fail to adequately plead their second, third, and fourth counterclaims under the <u>Twombly</u> standard.  Fourth, the Court will analyze Plaintiffs' contention that Defendants' counterclaims and affirmative defenses relating to "inequitable conduct" should be dismissed for (1) failure to plead with particularity; and (2) failure as a matter of law.  Finally, the Court will address Plaintiffs' attempt to strike Defendants' affirmative defenses.

### A.   Motion to dismiss Defendant's counterclaims 1 through 4.

#### 1.   Allegation of Injury

Pleading injury to competition is a requirement of an antitrust claim.  <u>Schuykill Energy Resources, Inc. v. Pennsylvania Power & Light Co.</u>, 113 F.3d 405, 418 (3d Cir. 1997).  Plaintiffs contend that Defendants should have pled an allegation of specific impact on inter-brand competition by an increase in prices or decrease in product quality.  Such an allegation, however, is not the only way that an antitrust claim can survive a motion to dismiss.  Moreover, the Sixth Circuit case Plaintiffs rely upon in support of their contention held that the plaintiff's antitrust claim should be dismissed for

failure to establish "that competition [] was harmed by any act of the Defendants." <u>Indeck Energy Service v. Consumers Energy Co.</u>, 250 F.3d 972, 977 (6th Cir. 2000).

Even though the Supreme Court reassessed the pleading requirements for an Antitrust claim, the Court did not require a heightened pleading standard. <u>Twombly</u>, 550 U.S. at 569 n.14. There only needs to be "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570. Here, Defendants allege that Plaintiffs had a high level of control over the market, including a large percentage of the market share, the power to exclude competitors, and the power to control pricing. Defendants further allege that Plaintiffs have acted in bad faith. Defendants' allegations are plausible on their face. Moreover, Defendants' counterclaims alleges more than what the Sixth Circuit dismissed as being an inadequate allegation of injury to competition because here, there is an "indication that competition was harmed." <u>Indeck</u>, 250 F.3d at 977. Therefore, Plaintiffs' motion to dismiss Defendants' counterclaims for failure to include an allegation of injury is **denied**.

### 2. Noerr-Pennington Doctrine

The <u>Noerr-Pennington</u> doctrine protects parties from antitrust liability when they institute their own claims for relief. Under <u>Noerr-Pennington</u>, when a Plaintiff institutes its own suit for patent infringement, it cannot be sued for violating an antitrust provision by virtue of the lawsuit. This immunity, however, does not apply to Plaintiffs who institute litigation that falls within the category of being a "sham." <u>Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.</u> (<u>PRE</u>), 508 U.S. 49, 60-61 (1993).

The Court considers two prongs when determining whether an action constitutes a "sham litigation," one objective, the other subjective. First, under the objective prong, the lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." <u>Id.</u> at 60. Additionally, "only if [the] challenged litigation is objectively meritless may a court

examine the litigant's subjective motivation." Id.  Second, under the subjective prong, the lawsuit must conceal "an attempt to interfere *directly* with the business relationships of a competitor, through the use of the governmental process . . . as an anticompetitive weapon." Id. at 60-61 (citation omitted).

Defendants assert in their counterclaims that Plaintiffs amended their original claim to the patent examiner and are now trying to enforce the original claim with knowledge that they are precluded from asserting that claim because of the doctrine of prosecution history estoppel.  Defendants additionally argue that because Plaintiffs have taken a position that is diametrically opposed to their previous position taken before the USPTO, their claim is made in bad faith, and thus, objectively baseless.

Plaintiffs contend that Defendants' counterclaims are nevertheless precluded under the Noerr-Pennington doctrine because they have not sufficiently alleged that Plaintiffs' suit falls within the "sham" litigation exception to immunity.  First, Plaintiffs assert that their lawsuit is predicated upon a disagreement over the interpretation of the amendment made during the prosecution of the '212 Patent.  Plaintiffs argue that the mere fact that Defendants disagree about the meaning and scope of the '212 Patent demonstrates that their lawsuit is not objectively baseless and has merit on its face.  Second, Plaintiffs contend that Defendants misstate the law when they assert that prosecution history estoppel precludes a patentee from asserting a patent.

This Court has dismissed counterclaims under Noerr-Pennington.  See, e.g., Syncsort Inc. v. Sequential Software, Inc., 50 F. Supp. 2d 318, 344 (D.N.J. 1999).  The claim in Syncsort, however, was dismissed because Defendant Sequential did not offer any reasons why Syncsort's litigation was anticompetitive, nor any facts that demonstrated that Syncsort had acted with an improper or malicious motive in filing its complaint.   In this case, Defendants have pled facts claiming certain misrepresentations to the USPTO in the prosecution of the '212 Patent, as well as evidence suggesting previous baseless litigation regarding their '346 Patent.  These facts tend to show a conspiracy to bring

objectively baseless litigation in the past as well as the present and, therefore, the Noerr-Pennington sham litigation exception may be applicable.

Nevertheless, the Court recognizes that it must first address whether a "reasonable litigant could realistically expect success on the merits." See PRE, 508 U.S. at 60-61; Hoffman-LaRoche Inc. v. Genpharm, 50 F. Supp. 2d 367, 380 (D.N.J. 1999).   Under the sham exception, "[r]easonableness is a question of fact, and the Court cannot make such factual determinations on a factual controversy roiled by a motion to dismiss." Id.   The fact that the underlying dispute will be resolved at a *Markman* hearing underscores the Court's need to wait and allow the requisite claim construction proceedings to be carried out before deciding whether Plaintiffs' claim is objectively baseless.   See Catch Curve, Inc. v. Venali, Inc., 519 F. Supp. 2d 1028, 1037 (C.D. Cal. 2007) (the Court did not rule out that claim construction arguments were objectively baseless but held that the results of a future claim construction hearing would allow the Court to better decide the applicability of Noerr-Pennington immunity). Therefore, Plaintiffs' motion to dismiss Defendants' counterclaims based on Noerr-Pennington immunity is **denied**.

### 3.   Relevant Market

It is well settled that an antitrust plaintiff must plead a relevant market.   See Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436-37 (3d Cir. 1997); Syncsort, 50. F. Supp. 2d at 331. In order to claim an antitrust violation, anticompetitive conduct must "substantially lessen competition within the area of effective competition."   See Brown Shoe Co. v. United States, 370 U.S. 294, 324 (1962) (citation omitted).   The "area of effective competition" must be defined by the plaintiff in terms of a relevant market in order to resolve whether competition was "substantially lessened" within such a market.   Id.

The Supreme Court has defined the relevant market as having two components; the first being

8

the product market and the second being the geographical market.  See Id.  When analyzing the product market, the "outer boundaries" are determined by either a "reasonable interchangeability of use or a cross-elasticity of demand between the product itself and substitutes for it."  Id.  Likewise, the geographical market is defined as the appropriate "section of the country" where the impact of the alleged anticompetitive activity is measured.  See Syncsort, 50 F. Supp. 2d at 331 (quoting Brown Shoe, 370 U.S. at 336).

The Third Circuit has held that a motion to dismiss may be granted "[w]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor." Queen City Pizza, 124 F.3d at 436.

In Syncsort, Defendant Sequential alleged in a counterclaim that Syncsort violated Section 2 of the Sherman Antitrust Act and that the relevant market included the national market for computer sorting software for UNIX operating systems.  50 F. Supp. 2d at 326.  The Court noted that Sequential failed to mention potential entrants into the market and other products that could be comparable or used as substitutes.  Id. at 332.  Moreover, Sequential failed to explain its rationale for choosing such a restrictive definition of potential sources of supply to the market rather than including existing or potential sources.  Id. at 332.  Sequential also did not include the broader sorting market of programs that perform UNIX functions, nor did it allege that UNIX was the only operating system in existence or that other operating systems are not comparable or equivalent.  Id. at 332-333.

In this case, Defendants Stafford and Rodicut pled in their counterclaim that the relevant market was "die-cutter blankets for rotary die-cutting machines in the United States."  This is insufficient.  As in Syncsort, Defendants fail to make any reference to interchangeable products or cross elasticity of

demand.  Defendants generally describe the relevant market for die-cutter blankets as being for rotary die-cutting machines.  There is no mention of any comparable products or possible entrants into this market.  Furthermore, Defendants make no mention in their pleadings of why they did not include any other products or competitors.

The Court recognizes Defendants' assertion that to their knowledge there are no reasonably interchangeable products, and therefore no cross elasticity of demand.  This does not, however, remedy Defendants' failure to formulate their pleading adequately.  As stated by the Third Circuit, it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Commonwealth of Pennsylvania, ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984).  See also Syncsort, 50 F. Supp. 2d at 333 (noting that the argument offered by Defendants in their brief "does not remedy the deficiencies of the allegations in the Antitrust Counterclaim").  Therefore, the Court **grants** Plaintiff's motion to dismiss Defendants' counterclaims regarding antitrust (counterclaims two, three, and four) for failure to sufficiently allege a relevant market.

### B.   Defendants' Second Counterclaim: Section 1 Antitrust violation

#### 1.   Copperweld Doctrine

Section 1 of the Sherman Antitrust Act provides that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce . . . is declared illegal." 15 U.S.C. § 1.  In order to properly plead a violation of Section 1, a plaintiff must allege "(1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted action was illegal; and (4) that the plaintiff was injured as a proximate result of the concerted action." In re Insurance Brokerage Antitrust Litigation, 2007 U.S. Dist LEXIS 25633 at *56 (D.N.J. Apr. 5, 2007) (quoting Queen City Pizza, 124 F.3d at 442).  Section 1 of the

Sherman Antitrust Act makes a "basic distinction between concerted and independent action." Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 768 (1984) (citation omitted). Neither restraint of trade without a conspiracy or combination, nor purely unilateral conduct are illegal under section 1. See Id. at n.13.

The Court agrees with Plaintiffs that Defendants' second counterclaim should be dismissed for failure to claim that Dicar and Robud are "separate economic actors" under Copperweld. Not making this allegation is fatal because a Section 1 claim requires concerted action. Therefore, Plaintiffs' motion to dismiss Defendants' Section 1 counterclaim (counterclaim two) is **granted**.

**C.    Failure under the Twombly Standard**

In Twombly, the Supreme Court established new language for pleading standards by holding that a plaintiff is required to plead  "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007).  The Supreme Court, however, expressly stated that it was not requiring "heightened fact pleading of specifics," Id. at 570, and reaffirmed that FED. R. CIV. P. 8 only requires a short plain statement of the claim.  Id. at 555.  The Third Circuit summarized the Twombly pleading standard by stating that "a claim requires a complaint with enough factual matter (taken as true) to suggest the required element."  County of Allegheny, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556 (2007).  Twombly "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]."  Id. (quoting Twombly, 550 U.S. at 556).

Plaintiffs contend that Defendants' second, third, and fourth counterclaims fail as a result of the pleading requirements outlined in Twombly because they fail to contain "plausible" allegations. Plaintiffs argue that Defendants do not identify any facts in support of the elements of their claims and that Defendants' allegations are conclusory.

11

### 1.  Second Counterclaim: Section 1 Antitrust Violation

Defendants' second counterclaim alleges a violation of Section 1 of the Sherman Antitrust Act. As stated earlier in this Opinion, in order to state a claim under Section 1, a plaintiff must allege sufficient facts to show: "(1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted action was illegal; and (4) that the plaintiff was injured as a proximate result of the concerted action."  In re Insurance, 2007 U.S. Dist LEXIS 25633 at *56 (quoting Queen City Pizza, 124 F.3d at 442).  Plaintiffs contend that Defendants fail to identify any facts supporting the elements of this claim and instead baldly assert that their allegations are plausible.  As discussed above, Defendants have failed to meet their burden of pleading concerted action and the relevant market.  Therefore, the Court **grants** Plaintiffs' motion to dismiss Defendants' Section 1 counterclaim.

### 2.  Third Counterclaim: Section 2 Antitrust Violation

In order to substantiate a monopolization claim under Section 2 of the Sherman Act, a plaintiff must allege sufficient facts to show: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."  Spectrum Sports v. McQuillan, 506 U.S. 447, 456 (1993).  Here, Plaintiffs contend that Defendants state in a conclusory fashion that there is a dangerous probability that Dicar and Robud will succeed in their attempt to monopolize the market.  Plaintiffs also contend that Defendants principally rely on their allegation that Dicar controls 70% of the market share, and that a Section 2 claim requires "something more" than this.

The first two elements of Defendants' Section 2 claim are sufficiently pled.  Defendants allege facts concerning misrepresentations and possible fraud with regard to two different patents.  One set of facts involve misrepresentations made to the USPTO regarding the '212 Patent.  The other set of

12

facts involve admissions that arguably show that the '346 Patent litigation was baseless.  By presenting these specific instances in their counterclaims, Defendants sufficiently allege that Robud and Dicar have engaged in anticompentative conduct.  Accordingly, when considering these facts in the light most favorable to Defendants, Defendants have satisfied <u>Twombly</u>.

The third element requires that Defendants demonstrate that there is a dangerous probability that Plaintiffs will achieve a monopoly.  Defendants argue that this element is satisfied where the entity charged with attempting to create a monopoly "possesses a significant market share when it under[took] the challenged anticompetitive conduct." <u>Banxcorp v. Bankrate Inc.</u>, 2008 U.S. Dist. LEXIS 51756 at *12-13 (D.N.J. July 7, 2008) (quoting <u>Barr Labs., Inc. v. Abbot Labs.</u>, 978 F.2d 98, 112 (3d. Cir. 1992).  Contrary to Defendants' argument, a proper pleading requires more than showing a significant market share.  The requisite "something more" showing "may include 'the strength of competition, probable development of the industry, the barriers to entry, the nature of the anticompetitive conduct, and the elasticity of consumer demand.'" Id. (quoting <u>Barr Labs</u>, 978 F.2d at 112).

Even though Defendants plead that Robud and Dicar possess a significant market share, 70%, there is no mention of any of the other <u>Barr</u> factors.  Defendants proffer only conclusory statements that Robud and Dicar raise barriers to entry.  Furthermore, even though Defendants claim that Robud and Dicar have an exclusive license arrangement with each other, such a fact does not qualify as "something more" because licenses protected by patent law are permissible. <u>See</u> <u>Ethyl Gas Corp. v. U.S.</u>, 309 U.S. 436, 456 (1940).  The mere existence of previous and present Court actions, without more, does not establish that Robud and Dicar are likely to create a monopoly.  Defendants have not alleged any facts that make it plausible that Plaintiffs have the power to control prices or exclude competition, and thus have a dangerous probability of achieving monopoly power. <u>See</u> <u>St. Clair v. Citizens Fin. Group</u>, 2008 U.S. Dist. LEXIS 92135 at *23 (D.N.J. Nov. 12, 2008).  Defendants have not adequately alleged facts

13

that suggest a dangerous probability that Plaintiffs will achieve a monopoly.  Therefore, Plaintiffs'

motion to dismiss Defendants' Section 2 counterclaim is **granted**.

### 3.  Fourth Counterclaim: NJ Antitrust Violations

Plaintiffs contend that Defendants' fourth counterclaim alleging violations of the New Jersey

Antitrust Act should be dismissed for failing to plead facts sufficient to establish a violation.  New

Jersey Antitrust law is to be "construed in harmony with ruling judicial interpretations of comparable

Federal antitrust statutes."  N.J.S.A. § 56:9-18.  Thus, New Jersey Courts look to federal interpretation

of the Sherman Act when applying New Jersey Antitrust Law.  See Monmouth Chrysler-Plymouth, Inc.

v. Chrysler Corp., 102 N.J. 485, 494 (1986); Cosmetic Gallery, Inc. v. Schoeneman Corp., 495 F.3d 46,

50-51 (3d Cir. 2007).  Accordingly, the Court will treat Defendants' counterclaim under New Jersey

Antitrust law the same as it treated Defendants' Sherman Act claims.  Since the Court has dismissed

Defendants' Sherman Act counterclaims, the Court **grants** Plaintiffs' motion to dismiss Defendants'

New Jersey Antitrust counterclaim for failure to plead a relevant market as well as sufficient facts to

show a dangerous probability of achieving monopoly power.

### D.  Lack of Factual Support

Plaintiffs contend that Defendants' first counterclaim and second affirmative defense must be

dismissed because Defendants do not offer any factual support and do not plead with particularity as

required by FED R. CIV. P. 9(b).  Plaintiff raises Rule 9(b) because Defendants assertions are predicated

on inequitable conduct before the USPTO.  Inequitable conduct claims have been determined to fall

within the special pleading rules of FED. R. CIV. P. 9(b).  See Mars Inc., at *12-13.  Defendants' third

affirmative defense specifically pertains to inequitable conduct before the USPTO and therefore is false

under Rule 9(b) as well.  To satisfy the particularity standard, a party may either specify the time, place,

and content of the allegedly fraudulent behavior, or otherwise "inject[] precision and some measure of

substantiation into their allegations of fraud." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).  See also EMC Corp. v. Storage Tech. Corp., 921 F. Supp. 1261, 1263 (3d Cir. 1996)..

### 1.   Defendants' First Counterclaim and Second Affirmative Defense

Because Defendants' first counterclaim and second affirmative defense are based on the same issue, the invalidity or unenforceability of the '212 Patent, the Court will review them simultaneously. Plaintiffs argue that Defendants' first counterclaim and second affirmative defense do not satisfy 9(b). In addition, they contend that Defendants first counterclaim and second affirmative defense fail as a matter of law because they are based entirely on unsworn attorney arguments.  Plaintiffs argue that attorney argument cannot be the basis of an inequitable conduct claim.

As to the particularity of the first counterclaim and second affirmative defenses, the Court finds that Defendants have met their burden under 9(b).  As Seville and EMC state, all a party needs to do is "inject precision and some measure of substantiation into their allegations of fraud" in order to carry their burden under 9(b).  See Id.  Defendants' allegations that the patents are invalid or unenforceable raises the question of whether Plaintiffs have engaged in inequitable conduct.  Defendants' allegation of fraud are sufficiently precise because Defendants expressly refer to the '212 Patent application and Plaintiffs' amendment to claim 18.  As to the sufficiency of Defendants' counterclaims resting on unsworn attorney statements, Plaintiffs provide no convincing authority as to why these allegations cannot provide the basis for a counterclaim or affirmative defense.  Therefore, Plaintiffs' motion to dismiss Defendants' first counterclaim and second affirmative defense is **denied**.

### 2.   Defendants' Third Affirmative Defense

Plaintiffs contend that Defendants' third affirmative defense alleging that Plaintiffs' conduct before the USPTO was inequitable should be stricken because it fails to identify any misrepresentation.

In order to make a claim or defense based on inequitable conduct, a party must establish: (1) intent to deceive the USPTO; and either (2) an affirmative misrepresentation of material fact; or (3) a knowing failure to disclose material information or fact.  See Mars Inc. v. JCM Am. Corp., 2006 U.S. Dist. LEXIS 67530 at *11 (D.N.J. June 14, 2006) (citing Purdue Pharma L.P. v. Endo Pharms., Inc., 438 F.3d 1123, 1128 (Fed. Cir. 2006).

Plaintiffs argue that Defendants rely on a position taken by Plaintiffs during the course of the present lawsuit that is contrary to the position they took when prosecuting the '212 Patent.  Plaintiffs argue that Defendants' allegation is predicated on an interpretation issue and does not provide grounds for an inequitable conduct claim.  Plaintiffs assert that in order to substantiate an inequitable conduct claim Defendants must plead a misrepresentation of a material fact known at the time of the patent application.  Plaintiffs again contend that Defendants' affirmative defense fails to contain sufficient particularity and is based entirely on unsworn attorney arguments.

The Court disagrees with Plaintiffs.  Defendants' allegation of inequitable conduct stems from a change in position taken in front of the USPTO, which is enough to show possible misrepresentations if it can be shown that Plaintiffs knew that the change in position resulted in the USPTO certifying a patent that should not have been certified.  Defendants have alleged enough to pursue an inequitable conduct claim.  Assuming Defendants' allegations are true, there exists a factual dispute as to whether there was: (1) intent to deceive the PTO; and either (2) an affirmative misrepresentation of material fact; or (3) a knowing failure to disclose material information.  Moreover, as to Plaintiffs' contention regarding the insufficiency of pleading facts based on unsworn attorney statements, the Court once again finds no reason why such facts cannot be a basis for an inequitable conduct affirmative defense. Plaintiffs' motion to dismiss Defendants' third affirmative defense is **denied**.

16

**F.**     **Fourth Affirmative Defense - Unclean Hands**

The affirmative defense of unclean hands in the patent antitrust context "requires that the alleged infringer show that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." <u>M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.</u>, 2007 U.S. Dist. LEXIS 23636 at *59 (D.N.J. Mar. 30, 2007) (quoting <u>Virginia Panel Corp. v. MAC Panel Co.</u>, 133 F.3d 860, 868 (Fed. Cir. 1997)). Plaintiffs contend that Defendants' affirmative defense must be stricken pursuant to Rule 12(f) because there is no plausible evidence that by filing their suit, Plaintiffs have impermissibly broadened the patent with anticompetitive effect.

The Court disagrees with Plaintiffs. Defendants have pled sufficient facts regarding an alleged misrepresentations to the USPTO so as to make it plausible that Plaintiffs have impermissibly broadened the scope of the patent with anti-competitive effect. Moreover, the Court will not strike Defendants' affirmative defense because the issue of whether Plaintiffs have impermissibly broadened the '212 Patent hinges upon a determination of the scope of the '212 Patent or whether the patent is otherwise invalid or unenforceable. As stated *supra*, these issues are not appropriate for determination on a Rule 12(b)(6) motion to dismiss, and are better left to be addressed at a *Markman* hearing subsequent to discovery. <u>See</u> <u>Id.</u> at *64. Plaintiffs' motion to strike Defendants' affirmative defense of unclean hands for lack of plausible evidence is **denied**.

**G.     Leave to Amend**

Defendants' request that they be granted leave to amend any pleading deficiencies the Court finds. Fᴇᴅ. R. Cɪᴠ. P. 15(a) states in relevant part that "a party may amend its pleadings only by leave of court or written consent of the adverse party; and leave shall be freely given as justice so requires." It is also well settled that Rule 15(a) favors allowing amendments to complaints in the absence of undue delay, bad faith, or undue prejudice. <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Nonetheless, "the

17

grant or denial of an opportunity to amend is within the discretion of the District Court." Id.

The Court recognizes Plaintiffs' argument that there are no additional allegations that can be added to correct Defendants' alleged pleading deficiencies. The Court accepts as true Plaintiffs' suggestion that harm is borne on the parties when suits are improvidently filed. The Court will, nevertheless, grant Defendants' leave to amend their pleadings. It is well settled that "outright refusal to grant [] leave without any justifying reason . . .is an abuse of [] discretion and inconsistent with the spirit of the Federal Rules. Id. Accordingly, because Defendants' pleading deficiencies may be corrected, and because the Court sees no undue delay, no evidence of bad faith, and no signs that granting leave would cause undue prejudice to Plaintiffs, the Court sees no justifying reason to deny leave to amend. Therefore, the Court **grants** Defendants leave to amend the pleading deficiencies outlined in this Opinion.

## IV.   CONCLUSION

For the reasons stated, Plaintiffs' motion to dismiss all of Defendants' antitrust counterclaims (counterclaims two, three, and four) for failure to plead a relevant market is **granted**; Plaintiffs' motion to dismiss Defendants' first counterclaim is **denied**. Plaintiffs' motion to strike Defendants' affirmative defenses is **denied**. The Court **grants** Defendants leave to amend their pleadings. An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:          June   22  , 2009
Orig.:         Clerk
cc:            All Counsel of Record
               Hon. Mark Falk, U.S.M.J.
               File

18